UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UZOMA IGBONWA,<br><br>    Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02027-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND, GRANTING MOTION TO STRIKE, DENYING REQUEST FOR JUDICIAL NOTICE, VACATING OCTOBER 26, 2018 MOTION HEARING AND SETTING INITIAL CASE MANAGEMENT CONFERENCE FOR FEBRUARY 22, 2019 AT 2:00 PM**<br><br>DKT. NOS. 23, 26, 35 |

## I. INTRODUCTION

Plaintiff Uzoma Igbonwa, pro se, asserts claims against Facebook, Inc. ("Facebook") and its Chief Executive Officer ("CEO"), Mark Zuckerberg, based on allegedly defamatory and harassing content about Igbonwa that was posted on Facebook by third parties. Presently before the Court is Defendants' Motion to Dismiss Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the hearing set for October 26, 2018 at 2:00 p.m**. For the reasons stated below, the Motion is GRANTED.[1]

## II. BACKGROUND

According to Igbonwa, he is a "native Nigerian, and currently residing there." Docket No. 32. He filed this action against Facebook and Zuckerberg on the basis of diversity jurisdiction and federal question jurisdiction under 28 U.S.C. §§ 1331-1332. Although Igbonwa has not

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

asserted any federal claims in this action, the Court finds that the requirements of diversity jurisdiction are satisfied. *See* 28 U.S.C. § 1332(a)(2) (providing for original jurisdiction over "citizens of a State and citizens or subjects of a foreign state" where amount in controversy is at least $75,000).[2]

Igbonwa alleges in the First Amended Complaint ("FAC"), which is the operative complaint,[3] that around May 2016, Facebook users with the aliases Emmanuel Chukwu and Don Chuks began posting falsehoods about Igbonwa on the Facebook page of a group named "Alor London Great Elite Forum," administered by a man who goes by the name of Chukwudi Peace (also an alias). FAC ¶ 5. Copies of some of the posts are attached to the original complaint.[4] Igbonwa alleges that the falsehoods contained in the posts "range from criminal activities that never took place to falsehoods about Plaintiff's personal life," and include allegations that he is a money-launderer, a wife beater and a "scammer." *Id*. Igbonwa has tried to learn the true identities of these individuals but has been unsuccessful. *Id*. ¶ 6. Although he attempted on "several occasions . . . to get Facebook to deactivate these fictitious characters and their maliciously motivated forum" his efforts were to "no avail." *Id.* ¶ 7.

In the FAC, Igbonwa asserts five claims. First, he asserts a claim for "[n]egligent causing of harm to others" ("Claim One"). In this claim, he alleges that Defendants have "created a platform . . . for people to share materials . . . for all to see and read, but failed to make sure that each Facebook user's identity is verified and authenticated so that each user would be known to the people who see and use his or her posts," and that as a result, he has been exposed to "cyberbullying, libel, defamation, harassment, injury to reputation, potential irreparable damage to

---

[2] Defendants do not dispute that there is federal jurisdiction over Igbonwa's claims.
[3] Igbonwa filed the FAC in response to a prior motion to dismiss by Defendants, rendering that motion moot and prompting the instant motion. *See* Docket Nos. 12 (prior motion to dismiss), 21 (Igbonwa's response) & 22 (FAC).
[4] Although the First Amended Complaint states that copies of the posts are attached, *see* FAC ¶ 5, Igbonwa did not attach the posts to the First Amended Complaint. Instead, he attached various news articles about Facebook and what appears to be a partial transcript of a Congressional hearing in which Zuckerberg testified. Because the paragraph in the original complaint that refers to the attached posts is identical to paragraph 5 in the FAC, the Court concludes that Igbonwa's FAC was referencing the same posts as were referenced in the original complaint. *See* Complaint ¶ 5.

2

his career and a credible threat and danger to his life." *Id*. ¶ 8. He further alleges that because "Facebook allows rogues and faceless people to appear and do damage to others, . . .the victims are left with no way of holding these rogues and faceless people liable." *Id. ¶* 9.

Second, Igbonwa asserts a claim for "[d]efamation" ("Claim Two"). In this claim, he alleges that "[b]ecause of the platform given to these named individuals and forums by . . . Zuckerberg and Facebook . . . [Igbonwa] has suffered and continues to suffer humiliation, embarrassment, injury to his reputation from countless people . . . even though none of these published allegations is true." *Id*. ¶ 10. He further alleges in this claim that he "fears for his life now that they have included threat[s] to his life yet there is no one to be questioned or avoided." *Id*.

Third, Igbonwa asserts a claim for "[n]egligence and lack of [d]ue diligence" ("Claim Three"). In this claim he alleges that "[b]ecause . . .Zuckerberg and Facebook . . .were appealed to by [Igbonwa] on several occasions, to correct the problem by pulling the false and defamatory posts against [Igbonwa], and to identify or otherwise unmask the faceless people who are using the platform against [Igbonwa] but they failed to act, they are negligent and portrayed lack of due diligence of their own rules against defamation." *Id. ¶* 11.

Fourth, Igbonwa asserts a claim for "[d]iscrimination and encouragement of illegal or unacceptable behavior" ("Claim Four"). In this claim, he asserts that Zuckerberg and Facebook failed to remove the posts about Igbonwa, who is a foreign national, whereas "records show when Americans requested for negative or damaging content to be removed, they get removed." *Id*. ¶ 12.

Finally, in his fifth claim, Igbonwa asserts a "[b]reach of contract and expectation of duty owed" ("Claim Five"). In this claim, Igbonwa alleges that Facebook and Zuckerberg "breached the contract they entered into with [Igbonwa] via the agreement signed when [Igbonwa] registered with Facebook, and also breached the [expectation] of the duty owed to [Igbonwa] to protect him from harm from users that would cause him such harm through bullying, harassment, embarrassment, threats and other forms." *Id*. ¶ 13.

Igbonwa seeks money damages, both compensatory and punitive. FAC, Prayer. He also

seeks an order compelling Facebook and Zuckerberg to: 1) "unmask the true identity of Emmanuel Chukwu, Don Chuks, and Chukwudi Peace so that he or she too would face the ramification of their ill action"; and 2) block Emmanuel Chukwu, Don Chuks, Chukwudi Peace and the Alor London Great Elite Forum from "any further presence on Facebook, and to delete from its platform any and all postings by the fictitious users and their malicious forum." *Id.*

In the Motion, Facebook and Zuckerberg ask the Court to dismiss all of Igbonwa's claims for failure to state a claim pursuant to Rule 12(b)(6). They argue that Igbonwa's claims fail for three reasons. First, they argue that Facebook is immune from liability as to all of the claims asserted against it under the Communications Decency Act of 1996 ("CDA") because the CDA "bars *any* claims that seek[ ] to hold an interactive-computer service provider liable for content created by its users." Motion at 3 (citing 47 U.S.C. § 230(c)). Second, Defendants contend Claims Two, Three and Five also fail because Facebook's "'rules' disclaim any duty to remove specific content from Facebook or to protect its users from harm." *Id*. Third, Defendants assert Igbonwa's claims against Zuckerberg fail for the reasons discussed above and because Igbonwa has not pled any specific facts showing why Zuckerberg is individually liable. *Id*.

In his Opposition brief, Igbonwa rejects Defendants' assertion that the CDA bars his claims. He contends immunity under the CDA is an affirmative defense and therefore, is not properly considered on a Rule 12(b)(6) motion. Opposition at 3-4. Igbonwa argues further that the CDA does not apply to his claims because the CDA immunizes a provider of interactive computer services from liability as a speaker or publisher of third party speech whereas his claims are based on Defendants' refusal to reveal the identities of the individuals who made the statements or to remove the content from Facebook. Opposition at 4-5. In particular, he states:

> Here, Plaintiff is only complaining that Facebook and Mark Zuckerberg should at least be able to identify its users that have posted hurtful and life threatening materials so that Plaintiff would go after those people, but Facebook and Mark Zuckerberg refused to do so. This request does not place the defendants here as publishers or speakers, it is merely saying *defendants refused to identify the speakers.* The complaint is also saying that defendants ignored his complaints against the speaker of the damaging contents and refused to take them down.

*Id*. at 4-5. He further asserts that to the extent removal of content is "something publishers do,

4

then Facebook, Inc. owned by Mark Zuckerberg, is a publisher[.]" *Id*. at 6. Igbonwa points to a report, which he attaches to a Request for Judicial Notice,[5] he says shows that Facebook has removed millions of posts because they contain inappropriate content and closed millions of fake accounts, which makes Facebook a publisher, Igbonwa contends. *Id*. Igbonwa also cites Congressional testimony in which Zuckerberg allegedly conceded that Facebook is a publisher by admitting that he is responsible for the content on Facebook. *Id.* at 7.

Finally, Igbonwa points to a bill that was signed into law in April 2018, the SESTA-FOSTA bill,[6] that he contends takes away any immunity Facebook may have enjoyed under the CDA. *Id*. at 8-9. In particular, he cites the preamble to the law, which describes the law as:

> An Act [t]o amend the Communications Act of 1934 to clarify that section 230 of such Act *does not prohibit the enforcement against providers and users of interactive computer services* of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking, *and for other purposes*.

*Id*. (quoting P.L. 115-164) (emphasis supplied in Igbonwa's brief).

In response to Defendants' argument that Facebook's rules expressly disclaim any responsibility for harmful content, and therefore are inconsistent with the some of his claims, Igbonwa points to Zuckerberg's testimony to Congress that Facebook is responsible for the content on its platform, which he contends contradicts the disclaimer in the rules. *Id*. at 9-10. Igbonwa also rejects Defendants' argument that Zuckerberg cannot be held liable on any of his claims. *Id*. at 10. He argues that to the extent his claims against Facebook are valid they are also valid as to Zuckerberg and that he need not allege any specific facts as to Zuckerberg in light of

---

[5] In his Request For Judicial Notice ("RJN"), Igbonwa asks the Court to take judicial notice of various articles that he contends contain facts that are relevant to the question of whether Defendants are protected from liability under the DCA, including Zuckerberg's alleged admission that Facebook and Zuckerberg are "publishers." *See* Docket No. 26. The RJN is DENIED. Rule 201 of the Federal Rules of Evidence permits courts to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Neither requirement is satisfied as to the "facts" contained in the articles Igbonwa has provided. Nor do these articles provide a basis for the Court to take judicial notice of the "fact" that Facebook and Zuckerberg are publishers.

[6] The Court understands Igbonwa to be referring to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017, PL 115–164 [HR 1865], which was signed into law on April 11, 2018.

Zuckerberg's own testimony that he is responsible for what happens at Facebook.

In their Reply, Defendants contend Igbonwa's arguments about the CDA fail because: 1) affirmative defenses that are apparent from the face of the complaint may be considered on a Rule 12(b)(6) motion; 2) Igbonwa's claims are, in fact, premised on Facebook's conduct as a publisher of third-party speech; 3) the test under the CDA is not whether Facebook is a publisher but rather, whether it is an interactive computer service; and 4) SESTA-FOSTA does not apply because that law eliminates immunity under the CDA only for content that involves sex trafficking. Reply at 1-5.

With respect to Igbonwa's reliance on Zuckerberg's alleged admission that Facebook is a publisher to overcome Defendants' challenge to some of his claims based on the Terms of Service, Facebook argues that this testimony had no binding effect and did not supersede the terms of service that govern Igbonwa's relationship with Facebook. *Id*. at 5-6. They note that any amendment to the terms of service can only be "in writing" and must be signed by Facebook. *Id*. Similarly, Defendants argue that Zuckerberg's testimony that he is responsible for what happens at Facebook is not sufficient to state a claim as to Zuckerberg where the FAC alleges no specific facts showing that Zuckerberg should be held liable for the conduct of which Igbonwa complains. *Id*. at 6.[7]

### III. ANALYSIS

#### A. Legal Standard

To state a claim for relief, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6);

---

[7] After Defendants filed their Reply brief, Igbonwa filed a "Sur-Rebuttal," which Defendants ask the Court to strike. *See* Docket No. 35. The Court did not grant leave to file this additional brief, as is required under Civil Rule 7-3(d). Further, the Sur-Rebuttal does not object to new evidence or notify the Court of any relevant legal decision that was issued after Igbonwa filed his Opposition brief. *See* Civ. L. R. 7-3(d). The Court therefore GRANTS Defendants' request and STRIKES the Sur-Rebuttal. The Court notes that Igbonwa makes essentially the same arguments in the Sur-Rebuttal as were raised in his Opposition brief, albeit with some elaboration. Consequently, the Court's striking of the Sur-Rebuttal has had no meaningful impact on its consideration of the issues raised in the Motion.

*see also Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007). "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (holding that where an affirmative defense is apparent from the face of the complaint the complaint may be dismissed under Rule 12(b)(6)).

In determining whether a plaintiff fails to state a claim, the court takes "all allegations of material fact in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). In addition, where, as here, the pleading at issue is filed by a plaintiff proceeding pro se, it must be construed liberally. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

### B. Whether All of Igbonwa's Claims are Barred Under the CDA

Defendants contend all of Igbonwa's claims are barred under Section 230(c) of the CDA, 47 U.S.C. § 230(c). The Court agrees.

"Section 230 of the CDA immunizes providers of interactive computer services against liability arising from content created by third parties[.]" *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008). In particular, Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." However, "[t]his grant of immunity applies only if the interactive computer service provider is not

also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of'' the offending content." *Id.* (quoting § 230(f)(3)). Thus, a defendant is entitled to immunity under the CDA if: 1) it is a "provider or user of an interactive computer service," 2) the information for which the plaintiff seeks to hold the defendant liable was "information provided by another information content provider," and 3) the complaint seeks to hold the defendant liable as the "publisher or speaker" of that information. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (citing 47 U.S.C. § 230(c)(1)).

With respect to the first element, it is clear from the face of Igbonwa's complaint that both Facebook and Zuckerberg are providers of an interactive computer service. The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." The allegations in the FAC fit this definition. In particular, the FAC alleges that "Zuckerberg and Facebook . . . created a platform (Facebook) for people to share materials . . . for all to see and read . . . " FAC ¶ 8. Numerous courts have found that Facebook is an "interactive computer service" for the purposes of the CDA. *See, e.g., Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015), aff'd 697 F. App'x 526 (9th Cir. 2017); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011). Further, where, as here, a plaintiff seeks to hold Zuckerberg liable only on the basis of Facebook's actions or inaction, he too is a provider of an interactive computer service for the purposes of the CDA.[8] *See Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014*)* (holding that Zuckerberg "qualifies for protection [under the CDA] because he is a 'provider' of Facebook's interactive computer service, U.S.C. § 230(c)(1), and [the plaintiff's] complaint seeks to hold him accountable for his role in making that service available, Compl. ¶ 12.").

---

[8] The Court notes that in his Opposition brief, Igbonwa made crystal clear that he only seeks to sue Zuckerberg on the basis of Facebook's conduct and not on the basis of any independent conduct on Zuckerberg's part. *See* Opposition at 10 ("when Plaintiff named Mark Zuckerberg in his complaint, he is synonymously naming Facebook, and vice versa."). Therefore, the Court need not reach the question of what conduct on Zuckerberg's part might take Igbonwa's claims against him outside the ambit of CDA immunity.

8

The second requirement of the three-part test, that the content at issue must have been created by "another content provider," also is met. The CDA defines an information content provider as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Igbonwa alleges that the offensive posts were by other Facebook users and does not allege that Facebook had any role in creating the content of the posts. Because "a website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online," the Court concludes that the second requirement is met. *See Klayman*, 753 F.3d at 1358.

Finally, the Court concludes that Igbonwa seeks to hold Facebook and Zuckerberg liable as the "publisher or speaker" of the allegedly defamatory information. In determining whether or not a claim meets this requirement, courts look beyond the labels given to the claims to determine whether "the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc*., 570 F.3d 1096, 1102 (9th Cir. 2009), as amended (Sept. 28, 2009). In other words, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Id*. This definition covers not only claims that are based on conduct that is directly related to the publication or removal or content but also on claims where causation depends on the content itself. *See Gonzalez v. Google, Inc*., 282 F. Supp. 3d 1150 (N.D. Cal. 2017) ("'Section 230(c)(1) is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party [c]ommunications.'")(quoting *Cohen v. Facebook, Inc*., 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017)).

In *Gonzalez v. Google, Inc*., the plaintiffs sued Google on the basis of allegations that it "'knowingly provided' ISIS with access to YouTube, allowing it to use the platform and services 'as a powerful tool for terrorism' by permitting it to post videos to spread propaganda, recruit followers, and plan and carry out attacks," and that Google "refuse[d] to actively identify ISIS

YouTube accounts" or to make "substantial or sustained efforts to ensure that ISIS would not re-establish the accounts using new identifiers." 282 F. Supp. 3d 1150, 1164 (N.D. Cal. 2017) (quoting complaint). The plaintiffs argued that Google was not entitled to immunity under the CDA because their claims were based only on Google's provision of the "tool" to conduct terrorist activity and not on the content of the posts themselves, but the court disagreed. *Id*. Citing *Cohen*, the court found that the plaintiffs' theory relied on the content of the posts to establish causation, thus supporting the conclusion that Google was acting as a publisher. *Id*. at 1165. The court explained that the plaintiffs did not "allege that they have been harmed by the mere provision of the YouTube platform to ISIS" but instead alleged that Google contributed to the rise of ISIS by allowing it to disseminate its terrorist messages, "which resulted in great harm" to the plaintiffs. *Id*. It further reasoned, "[i]f the court were to apply Plaintiffs' logic and ignore the content of any ISIS-related YouTube postings in construing Plaintiffs' claims, it would be impossible to discern a causal basis for Google's alleged responsibility for the terrorist attacks." *Id*.

Here, all of Igbonwa's claims turn on the theory that Defendants wrongfully permitted third parties to post defamatory and threatening statements about him and refused to remove the content or provide Igbonwa with the information he needed to pursue claims against the individuals directly. The harm he alleges though (injury to his reputation and being subject to harassment and death threats) is the result of the *content* of the posts, not the mere fact that Defendants permitted third parties to post statements about Igbonwa. Because Igbonwa can only establish causation of harm on his claims based on the content of the messages that were posted, the Court concludes that all of his claims treat Defendants as publishers.[9]

Accordingly, the Court concludes that Igbonwa's claims are subject to dismissal under

---

[9] The Court rejects Igbonwa's reliance on vague language in the preamble of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 in support of the argument that CDA immunity does not apply to his claims. Although there is vague language in the preamble that refers to "the enforcement against providers and users of interactive computer services of . . . criminal and civil law relating to sexual exploitation of children or sex trafficking, *and for other purposes*," Igbonwa points to nothing in the legislative history that suggests this language was intended to eliminate the immunity that is afforded providers of interactive computer services under the CDA outside of the context of sexual exploitation of children and sex trafficking. Therefore, the Court declines to adopt the broad reading of this law that Igbonwa advocates.

Section 230(c) of the DCA and dismisses all of Igbonwa's claims on that basis. The Court does not reach Defendants' argument that some of Igbonwa's claims are also barred under Facebook's Terms of Service.

### C. Whether Igbonwa Should be Given Leave to Amend

Leave to amend is generally granted with liberality. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Leave need not be granted, however, where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court finds that Igbonwa's claims against Facebook and Zuckerberg fall squarely within the CDA's immunity provision, as a matter of law, and cannot be cured by amendment. Therefore, it would be futile to grant leave to amend as to the claims asserted in the complaint. *See Caraccioli v. Facebook, Inc.,* 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016), aff'd, 700 F. App'x 588 (9th Cir. 2017), cert. denied, 138 S. Ct. 1027 (2018), reh'g denied, 138 S. Ct. 2021 (2018) (dismissing claims against Facebook without leave to amend on the basis that they were barred under Section 230(c) as a matter of law); *Sikhs for Justice*, 144 F.Supp.3d at 1095-96 (same).

Nonetheless, it is apparent from the FAC and Igbonwa's pleadings that one of the primary forms of relief he seeks is to obtain the identity of the individuals who posted the allegedly defamatory and harassing statements about him so that they may be held liable. *See, e.g.,* FAC ¶ 9 ("It is clear that any Facebook user who commits libel or defamation could be liable to the person who was defamed or whose libelous material was published against . . .[b]ut when Facebook allows rogues and faceless people to appear and do damage to others, then the victims are left with no way of holding those rogues and faceless people liable"); FAC ¶ 15 (Defendants "should be compelled to unmask the true identity of Emmanuel Chukwu, Don Chuks, and Chukwudi Peace so that he or she too would face the ramification of their ill actions."). In light of these allegations, the Court concludes that Igbonwa may be able to amend his complaint to state a claim under 28 U.S.C. § 1782, which allows a district court to order a person residing or found within its district to produce documents or provide testimony for use in a foreign legal proceeding, unless the

1 disclosure would violate a legal privilege.

2 In *In re Hoteles City Express*, Judge Corley explained that under Section 1782 a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent, so long as a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." No. 18-MC-80112-JSC, 2018 WL 3417551, at *2 (N.D. Cal. July 13, 2018) (quoting *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 256 (2004)). Thus, an individual residing outside of the United States who seeks to bring an action for defamation in a foreign jurisdiction against unknown third parties based on anonymous posts on Facebook *may* be able to obtain an order compelling Facebook to disclose identifying information about those individuals under Section 1782. *See id*. Courts have broad discretion as to whether to order such disclosure, however, and consider a variety of factors, including: "1) whether the 'person from whom discovery is sought is a participant in the foreign proceeding'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance'; (3) whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Id*. (quoting *Intel*, 542 U.S. at 260-61).

While Igbonwa's FAC does not contain sufficient allegations to justify an order compelling disclosure of identifying information under Section 1782 (or even assert such a claim), it is possible that he will be able to amend his complaint to assert a viable claim under that section. The Court concludes that it is in the interest of justice to allow such an amendment. Therefore, the Court will give him an opportunity to amend his complaint to assert a claim under 28 U.S.C. §1782. In all other respects, leave to amend is denied.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED and all of the claims asserted against Igbonwa in the FAC are dismissed with prejudice. If Igbonwa seeks to assert a claim under 28 U.S.C. § 1782, he may file an amended complaint **within sixty days** of the date of this order. A Case Management Conference is set for **February 22, 2019 at 2:00 p.m**. All other

12

deadlines contained in the Court's Order Setting Initial Case Management Conference and ADR Deadlines [Docket No. 3] and the June 21, 2018 scheduling stipulation [Docket No. 18] are vacated.

**IT IS SO ORDERED.**

Dated: October 9, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge